COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES; and Janie Miller, then Secretary, Succeeded by Audrey Tayse Haynes, Appellants

v.

RIVERVALLEY BEHAVIORAL HEALTH, Appellee.

No. 2013–CA–001226–MR.

Court of Appeals of Kentucky.

Aug. 29, 2014.

Discretionary Review Denied by Supreme Court Aug. 12, 2015.

Ann Truitt Hunsaker (argued), Assistant Counsel, Cabinet for Health and Family Services, Office of Legal Services, Frankfort, KY, for appellant.

Stephen R. Price (argued), Sr., John W. Woodward, Jr., Allison Brown Vermilion, Louisville, KY, for appellee.

Before ACREE, Chief Judge, MAZE and THOMPSON, Judges.

## OPINION

MAZE, Judge:

The Commonwealth of Kentucky, Cabinet for Health and Family Services (the Cabinet), and the Cabinet Secretary appeal from a May 30, 2012 opinion and order by the Franklin Circuit Court which granted the statutory appeal by RiverValley Behavioral Health and set aside the Final Order entered by the Cabinet Secretary. The Cabinet primarily argues that the circuit court failed to give proper deference to its interpretation of the controlling statutes and regulations regarding the setting of Medicaid reimbursement rates. However, we agree with the circuit court that the Cabinet acted in excess of its statutory authority by freezing RiverValley's reimbursement rates for seven years without reference to its actual costs. We further agree with the circuit court that the Secretary's Final Order failed to set forth sufficient findings to explain the deviation from the hearing officer's recommended findings concerning the amount which RiverValley is owed. Consequently, the circuit court properly adopted the recommended order, and we affirm.

The circuit court set out the undisputed factual and procedural history of this case as follows:

The procedural history of this case is unconventional and protracted. RiverValley Behavioral Health (hereinafter "RiverValley") is a not-for-profit mental health provider offering inpatient services for juveniles in and around Daviess County, Kentucky. The Cabinet's Department for Medicaid Services (hereinafter "DMS") regularly reimburses mental health providers, including RiverValley, for inpatient psychiatric services for Medicaid patients. At issue in this appeal are reimbursements for the period of July 1, 2000 through October 14, 2007. Petitioner claims that the rate of reimbursement set by DMS for services provided was not reasonable or adequate, and was not related to the actual cost of providing care, as required by the applicable statute. DMS issued its final July 1, 2000 rate notice on May 13, 2004, which RiverValley then challenged. An initial review of this issue occurred at the administrative level. On July 22, 2004 a Dispute Resolution Meeting (hereinafter "DRM") was held pursuant to 907 [Kentucky Administrative Regulations (KAR) ] 1:671, Section 8. No Dispute Resolution Decision was ever issued, as provided for in 907 KAR 1:671, Section 8(1), and no administrative hearing was ever held. On March 24 2009 DMS did give RiverValley notice that the final rates for the July 1, 2001 through October 14, 2007 rate periods were all set at $374.85 per diem. RiverValley again filed a timely request on this rate in accord with the regulations. Because the Cabinet essentially refused to process its administrative appeal of this decision, RiverValley sought relief by filing the present action in Franklin Circuit Court.

The Franklin Circuit Court action was filed May 13, 2009. The Court noted the Cabinet's argument that RiverValley failed to complete administrative processes for seeking internal review of its decision, but recognized that RiverValley attempted to exhaust its administrative remedies to no avail. The Court was convinced that it was in the public interest to seek resolution of Petitioner's claims through mediation. The Court recognized that RiverValley had already waited more than five years for an administrative decision, and that no progress had been made toward resolving the dispute. It appeared from the record that the failure to resolve the dispute was largely due to the Cabinet's

unwillingness to process the administrative appeal, and that RiverValley was being unfairly penalized through this delay caused primarily, if not exclusively, by the Cabinet.

This Court, after consultation with and agreement by the parties, referred the matter to mediation per Local Rule 14. The parties further agreed, and the Court ordered, that the mediation, if unsuccessful, would be followed by a summary administrative proceeding that would be conducted in lieu of a remand for exhaustion of administrative remedies. Both parties agreed to this procedure, and the Court appointed Hon. Roger Crittenden as mediator. The parties agreed that Judge Crittenden would also serve as hearing officer and would make a recommended order to the Cabinet Secretary in the event mediation was unsuccessful.

Mediation did prove unproductive. Judge Crittenden held a further hearing and allowed a full opportunity for both parties to present all documentary evidence, legal argument, factual presentation, and testimony. Thereafter, Judge Crittenden made a recommendation to the Cabinet Secretary in the same manner as a hearing officer's report and recommendation per Chapter 13B. A two-day summary hearing was held in June, 2011 and both parties presented testimony. Following the hearing, Judge Crittenden issued his formal Findings of Fact, Conclusions of Law, and Recommended Decision.

The Recommended Decision thoroughly details the process by which DMS pays free-standing psychiatric hospitals such as RiverValley a per diem rate for inpatient psychiatric hospital services to Medicaid patients. These per diem rates are typically established by DMS at the beginning of the July 1 rate year, and the rates are based on the previous year's Medicaid allowable costs, with some adjustments made for inflation. (Recommended Decision, p. 3–4). The total allowable costs are then divided by a facility's total Medicaid days to arrive at a per diem rate. (*Id.*) The parties agreed that RiverValley was actually paid $374.85 per diem for the July 1, 2000 rate year through October 14, 2007, as calculated by DMS. (*Id.* at 5). The 2001 rate was established based on the lesser July 1, 2000 rate.

This July 1, 2000 rate was calculated based on RiverValley's FYE June 30, 1999 cost report, adjusted for inflation. However[,] fixed costs were spread out over an unusually large number of patient days in that year, resulting in costs per day that when calculated were unusually low. (*Id.*) RiverValley argues, and the uncontested record supports, that these and other changes in circumstances resulted in the inadequate per diem rate of $374.85, and that RiverValley's actual costs were in fact $456.36 per diem. (Id. at 6). Mr. Cooper, a DMS Budget Reimbursement Officer who testified at the hearing conceded in his testimony, "[RiverValley] and I probably have a different definition of adequate, but mine would be we are covering your [marginal] costs and we are covering a [proportional] amount of your fixed costs. And we were not." (*Id.* at 6; Cooper Tr. Vol I, pp. 111–12). Further he stated, "RiverValley, to my recollection, caught the worst in terms of a prospective rate, being that their census was high and then it was low. And I can't recall of another hospital being in that dilemma." (*Id.* at 7; Cooper Tr. At [119] ).

Judge Crittenden's Recommended Decision also details changes made to DMS regulations. Prior to June 29, 2001, any changes in the hospital's cir-

cumstances which might cause the rate to be inadequate for one year would have been taken into consideration and the rate year adjusted accordingly. However, DMS filed an emergency regulation on June 29, 2001, which provided that psychiatric hospitals would receive either the rate established for the previous July 1, 2000 rate year, or its costs as determined by the traditional rate setting method based on a calculation of the hospital's costs, whichever amount was *less*. 907 KAR 1:013E, Section 15. (Recommended Decision, Joint Ex. 8). DMS applied the per diem figure as discussed *supra*, as it was lower than the $491.14 per diem rate reflecting the hospital's actual costs and changed circumstances. (Recommended Decision, p. 7–8). Judge Crittenden recognized that for every dollar expended by River-Valley in providing care to Medicaid patients, RiverValley received 76 cents in reimbursements. (*Id.* at 8).

The Recommended Decision also recognized that RiverValley was confronted with exactly the same scenario as was presented in *Northkey Community Care v. Commonwealth of Kentucky, Cabinet for Health Svcs.*, Civil Action No. 03–CI–804 (Opinion and Order entered April 15, 2004). In *Northkey*, this Court held that the administrative regulation relied on by the Cabinet to impose a lower reimbursement rate was in conflict with the statute. DMS changed the regulation again before setting the July 1, 2002 rate, and continued to apply the $374.85 per diem rate without adjusting for inflation or recalculating at all. (*Id.* at 9). April 1, 2003, DMS abandoned the per diem methodology for the Diagnosis Related Group (hereinafter "DRG") methodology, and a new regulation provided "effective April 1, 2003, an inpatient service provided to an eligible Medicaid recipient in a ... psychiatric

hospital shall continue to be reimbursed at a per diem rate in effect for the rate year beginning July 1, 2002." 907 KAR 1:013E, Section 10(1). (Recommended Decision, Joint Ex. J.). Although the regulation applicable to the July 1, 2003 rate year stated that the per diem rate shall be adjusted annually to account for inflation using the CMS Input Price Index, no such adjustments were made. (*Id.* at 9–10; Joint Ex. J.). The regulation also required the Department to rebase per diem rates no less frequently than every three years using the most recent audited cost reports. (*Id.* at Joint Ex. J). RiverValley's rates were rebased July 1, 2000, but were not again adjusted until October 15, 2007. (Id. at 10; see also 907 KAR 1:013, Section 10(3) (Joint Ex. K) (the version of the regulation remaining in effect until October 15, 2007)). On October 15, 2007, the rate was adjusted to $580 per diem, a rate applied to all psychiatric hospitals. (*Id.* at 10). This increased rate covered only eighty percent of RiverValley's actual costs.

Judge Crittenden, upon review of the relevant regulations' trending, indexing, and rebasing provision, and the Franklin Circuit Court's decision in *Northkey*, found that the DMS rate methodology used to set the July 1, 2001 rate was in violation of KRS [Kentucky Revised Statutes] 205.560. (*Id.* at 12). Further, the Recommended Decision found that RiverValley should receive approximately $14 million in additional reimbursements, based on RiverValley's calculations. (*Id.* at 15). Given the long periods of delay in this matter, the decision noted that there was a "substantial possibility" that RiverValley could be awarded as much as $14 million *plus* interest. (*Id.*) Judge Crittenden, however, recommended that a 20 percent

parity factor[1] be applied and that no interest be awarded, reducing his recommended amount to $9,636,000.00 (*Id.* at 16).

DMS filed exceptions to the Recommended Decision, to which RiverValley responded. The Secretary entered a Final Order November 23, 2011, finding that the recommendation must be "modified." The Secretary then proceeded to enter new Findings of Fact noting the same circumstances and realities faced by RiverValley, and the same 2000–2007 regulatory changes. The Secretary found that, "absent RiverValley's changed circumstances, the reimbursement rate for RiverValley was not [in]adequate." (Final Order, p. 4). The Secretary determined that DMS must retroactively adjust RiverValley's rates due to changed circumstances to a rate of $422.53 per diem for the period of July 1, 2000 through October 14, 2007, resulting in an additional reimbursement to RiverValley of $3,966,165.44. (Final Order, p. 5). In support of these figures, the Secretary cited to RiverValley's reduction of Medicaid utilization of 15.90% in SFY 2001 (4.66% in 2000 to 78.76% in 2001). The Cabinet then set the upward rate adjustment at 80% of the difference in utilization, for an increase of $47.68 per day, resulting in adjustment to $422.53 per diem. (*Id.*).

Following issuance of the Final Order, RiverValley filed a motion in this Court for leave to file a supplemental complaint, which the Court granted on January 3, 2012. Petitioner's supplemental complaint asserts a [KRS 13B.140] appeal of the Secretary's Final Order, asserting that the Final Order failed to articulate non-arbitrary findings and conclusions for what RiverValley considered to be a stark deviation from the Recommended Order. RiverValley also petitioned for a Writ of Mandamus, asserting that the new Medicaid rates and reimbursements beginning July 1, 2011 failed to timely schedule a DRM within the explicit time limitations pursuant to the regulations, and requesting that the Court direct the Cabinet to timely process the 2011 rate appeal. A second Writ of Mandamus was included in the Supplemental Complaint, requesting that the Court direct the Cabinet to accurately compensate RiverValley for the early and periodic screening, diagnosis, and treatment (hereinafter "EDSTP") services it provides, as regulation 907 KAR 11:035, Section 4(1) directs. RiverValley asserts in the Complaint that the Cabinet treated EDSTP days the same as ordinary Medicaid days and has failed to rebase or reset these rates since February 1, 2009. The Court, by Order entered February 2, 2012, held Counts 2 and 3 of the Amended Complaint in abeyance pending dispute resolution at the administrative level, and the Court understand[s] that these matters are still pending before the Cabinet.

On February 20, 2012, this Court entered an Order directing the Cabinet to pay RiverValley the $3,966,165.44 by March 1, 2012, but the Cabinet failed to do so, even though the Cabinet Secretary had ruled that this amount was owed to RiverValley. After RiverValley filed a motion to show cause on March 15, 2012, the Cabinet entered a special

---

1. It appears that Judge Crittenden, by applying the parity factor of 20%, was attempting to create an incentive for resolution. The Recommended Decision notes that the Cabinet risked a potential judgment against it for more than $14 million dollars, and that RiverValley [*sic*] risked a substantially reduced judgment and inevitable delay for appeal. (Recommended Decision, p. 16). [Footnote in original].

appearance in response, asserting that the Court lacked jurisdiction. While the Cabinet filed an interlocutory appeal of the Court's February 20 Order Compelling payment, the Court of Appeals dismissed this appeal by Order entered June 5, 2012.[2]

The case was submitted for final decision March 22, 2012, after the case had been fully briefed by both parties. Petitioner asserted that the hearing officer, having heard the testimony and reviewed the documentary evidence, accurately determined that RiverValley was entitled to $9,636,000.00, as recommended. The Secretary's Final Order, Petitioners argue, should be reversed as it is not based on substantial evidence, failed to comply with KRS § 13B.120(1), and failed to consider the decision in *Northkey* and relevant regulations requiring rebasing and inflation adjustments. Thus Petitioner asks that the Court enter an order adopting Judge Crittenden's recommended decision and directing the Cabinet to pay RiverValley the $9,636,000.00 in additional reimbursements, plus interest. The Cabinet asserts that the Secretary's Final Order is consistent with the requirements of KRS Chapter 13B; that the Cabinet's set rates are justified by and compliant with state and federal law; and that the parties reached a settlement agreement which should be honored. The Cabinet asks that the Secretary's Final Order be affirmed and the Cabinet's reimbursement methodology be upheld as consistent with state and federal law and regulations.

In an opinion and order entered on May 31, 2013, the circuit court reversed the Secretary's Final Order. The court concluded that the Secretary's Order was not supported by substantial evidence, and that the reimbursement rates set by the Secretary were arbitrary and unrelated to RiverValley's actual costs in violation of KRS 205.560(2). The circuit court further found that Judge Crittenden's Recommended Order was supported by substantial evidence and correctly applied the controlling law. Consequently, the circuit court adopted the Recommended Order and directed the Cabinet to pay RiverValley $9,636,000 in additional reimbursements for the time period at issue, with a credit for the $3,966,165.44 already paid.

The Cabinet filed a timely motion to alter, amend or vacate this order pursuant to Kentucky Rules of Civil Procedure (CR) 59.05. On July 2, 2013, the circuit court denied the motion, concluding that the Cabinet was not entitled to relief on any of its stated grounds. This appeal followed.

As an initial matter, the Cabinet contends that DMS and RiverValley entered into an informal settlement of this dispute in 2007. The Cabinet points to a number of e-mail exchanges between RiverValley and DMS. Based upon these exchanges, the Cabinet states that it agreed to increase RiverValley's reimbursement rates after 2007 in order to compensate it for the underpayment during the period from 2001 through 2007. The Cabinet argues that RiverValley should be held to the terms of this alleged agreement.

In his role as hearing officer, Judge Crittenden expressly rejected this argument, finding no evidence that the parties actually reached a settlement agreement.[3]

---

2. *Cabinet for Health & Family Services v. River Valley Behavioral Health*, No. 2012–CA–000412–MR. (Footnote added).

3. The Cabinet presented e-mail exchanges between Mike Mountain, RiverValley's Chief Financial Officer, Paul Cooper, and then-DMS Commissioner Glenn Jennings. The e-mails were exchanged between November 21, 2006,

Furthermore, Judge Crittenden noted that rates set in 2007 only covered 80% of RiverValley's costs, which would have been insufficient to compensate RiverValley for the underpayment during the previous years. While the Secretary did not expressly adopt or reject this finding, she simply stated that "I have not relied upon the understanding of DMS that there was a settlement agreement or that the 2007 going-forward rate paid RiverValley more than its actual costs." Since neither Judge Crittenden nor the Secretary found that there was an enforceable agreement between DMS and RiverValley to settle this matter, this Court is not at liberty to make such a finding on appeal.

KRS 13B.150(2) sets out the scope of judicial review of decisions of administrative agencies, as follows:

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:

(a) In violation of constitutional or statutory provisions;

(b) In excess of the statutory authority of the agency;

(c) Without support of substantial evidence on the whole record;

(d) Arbitrary, capricious, or characterized by abuse of discretion;

(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

"Judicial review of an administrative agency's action is concerned with the question of arbitrariness." *Commonwealth, Transportation Cabinet, Department of Vehicle Regulation v. Cornell,* 796 S.W.2d 591, 594 (Ky.App.1990), citing *American Beauty Homes Corporation v. Louisville & Jefferson County Planning & Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964). "On factual issues[ ], a circuit court in reviewing the agency's decision is confined to the record of proceedings held before the administrative body and is bound by the administrative decision if it is supported by substantial evidence." *Id.* at 594. In this case, however, the Secretary did not dispute the hearing officer's factual findings.

■ The Cabinet primarily argues that the circuit court improperly substituted the judgment of the hearing officer's Recommended Order for that of the Secretary as expressed in the Final Order. We agree with the Cabinet that the Secretary was not bound by the conclusions set out in Judge Crittenden's Recommended Order. KRS 13B.120(2) grants the Secretary broad discretion to "accept the recommended order of the hearing officer and adopt it as the agency's final order, or . . .

and October 2, 2008, and discussed various methods of settling RiverValley's rate dispute with DMS. However, there is no indication in these exchanges that the parties reached a meeting of minds concerning the exact terms of any settlement. Moreover, in his testimony before Judge Crittenden, Cooper admitted that he did not have authority to bind DMS to any settlement agreement at the time the e-mails were exchanged with RiverValley. Cooper believed that Commissioner Jennings had such settlement authority, but was unable to say so for certain. Testimony of Paul Cooper, June 21, 2011, Transcript Vol. 1, p. 121. The Cabinet does not point to any other evidence showing that any of the DMS parties to the e-mails had the authority to enter into a settlement agreement.

[to] reject or modify, in whole or in part, the recommended order, or ... [to] remand the matter, in whole or in part, to the hearing officer for further proceedings as appropriate." However, where the Secretary chooses to reject or modify the hearing officer's conclusions, the final order "shall include separate statements of findings of fact and conclusions of law." KRS 13B.120(3). Although the Secretary is not required to refute every finding of fact and conclusion of law made in the recommended order, the final order must articulate a rationale for departing from the recommendation which is sufficient to explain the reasons for the deviation and to allow meaningful appellate review. *See Baker v. Commonwealth, Kentucky Retirement Systems,* 2007 WL 3037718 (Ky. App.2007)(2005–CA–001588–MR) at 21–24.

■ The Cabinet also notes that the circuit court relied extensively on its prior ruling in the *Northkey* case. That opinion was not appealed beyond the circuit court level, and it is not binding on this Court. Nevertheless, the only issue concerns DMS's adoption and application of regulations regarding the reimbursement rate for the period from 2001 through 2007. These are entirely issues of law, which we review on a *de novo* basis. *Aubrey v. Office of Attorney General,* 994 S.W.2d 516, 519 (Ky.App.1998). This Court will give some deference to an agency interpretation of the regulations and the law underlying them that it is charged with implementing, so long as the "agency interpretation is in the form of an adopted regulation or formal adjudication." *See Louisville/Jefferson County Metro Government v. TDC Group, LLC,* 283 S.W.3d 657, 661 (Ky.2009), quoting *Board of Trustees of Judicial Form Retirement System v. Attorney General of the Commonwealth,* 132 S.W.3d 770, 786–87 (Ky.2003); *see also Chevron, U.S.A., Inc. v. Natural Res. Def.*

*Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, the courts have the ultimate responsibility in matters of statutory construction and the reviewing court is not bound by an administrative body's interpretation of a statute. *Board of Educ. of Fayette County v. Hurley–Richards,* 396 S.W.3d 879, 885–886 (Ky.2013), and *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet,* 689 S.W.2d 14, 20 (Ky.1985).

KRS 205.560(2) specifies that "[p]ayments for hospital care ... shall be on bases which relate the amount of the payment to the cost of providing the services or supplies." Likewise, the controlling federal regulations require that Medicaid payments are "reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers to provide services in conformity with applicable State and Federal laws, regulations, and quality and safety standards." 42 Code of Federal Regulations (C.F.R.) § 447.253(b)(1)(i). The Cabinet makes no showing that the regulations at issue meet either standard.

■ On June 29, 2001, DMS filed an emergency regulation changing its rate-setting methodology for the July 1, 2001 rate year. The regulation provided that psychiatric hospitals would receive either the rate established for the previous July 1, 2000 rate year, or its costs as determined by the traditional rate-setting method based on a calculation of the hospital's costs, whichever amount was less. 907 KAR 1:013E Section 15 (6/20/01). This regulation effectively froze RiverValley's reimbursement rate at the lesser amount of $374.85 *per diem* which DMS carried over from the previous rate year. Subsequent changes to the regulations in 2003 froze RiverValley's reimbursement rate at this amount until 2007.

The regulations adopted by DMS during the period at issue did not reasonably relate to RiverValley's actual costs, but arbitrarily froze the reimbursement at the 2000 level. The Secretary's Final Order does not discuss how the applicable statutes authorized DMS to promulgate this rule. The Secretary merely asserts that DMS had the legal authority to do so, and that DMS "correctly calculated and applied the reimbursement rate for RiverValley in the same manner as for all other like-providers and as established by regulation and the State Plan from 2000 to 2007." Upon reaching this conclusion, the Secretary went on to find that the reimbursement rate set for RiverValley was "not inadequate."

■ We conclude that this legal determination was clearly erroneous on its face. In addition to the requirements of KRS 205.560, federal law requires that DMS must make sufficient findings to ensure that its Medicaid reimbursement rates fall "within a range of what could be considered reasonable and adequate." *Memorial Hospital, Inc. v. Childers*, 896 F.Supp. 1427, 1435 (W.D.Ky.1995). Neither the Secretary nor the Cabinet made any attempt to explain how the methodology adopted by DMS complies with the express language of KRS 205.560 or the controlling federal statutes and regulations. Likewise, the Cabinet makes no attempt to show how this methodology relates to RiverValley's actual and allowable provider costs.

The Cabinet also points to an unpublished opinion of this Court, *Cabinet for Health & Family Services v. Regional Healthcare, Inc.*, 2013 WL 4508205 (Ky. App.2013)(2010–CA–001319–MR), as holding that the Cabinet has the authority to promulgate set Medicaid reimbursement rates at an amount less than the provider's actual costs. But in that case, the issue involved whether the Cabinet could promulgate emergency regulations which altered the provider's reimbursement rate midway through a universal rate year. This Court held only that the Cabinet had such authority. *Id.* at 10–11.[4] The current case, on the other hand, involves whether the regulations comply with the statutory mandate, and the sufficiency of the Secretary's findings concerning the amounts owed to the provider. Given the distinct issues, the holding in *Regional Healthcare* is not applicable to the current case.

Furthermore, the Secretary's Final Order is deficient in several other respects. Despite having found that RiverValley's 2001 reimbursement rate was appropriate, the Secretary found that DMS should have adjusted that rate based upon a showing of changed circumstances. The parties agree that the 2000 reimbursement rate was set at an artificially low level due to changes in the rate-setting methodology and in RiverValley's operations. Based upon these changes in circumstances, the Secretary then adopted a reimbursement rate of $422.53 *per diem.* However, Judge Crittenden found, and the Secretary did not dispute, that RiverValley's actual costs from 2000 to 2004 ranged from $456.36 to $491.14 *per diem.* Again, the Secretary made no attempt to explain this difference or how the amount relates to RiverValley's actual and allowable costs.

Similarly, in his Recommended Order, Judge Crittenden pointed out that the version of 907 KAR 1:013E adopted in 2003

required adjustment of the *per diem* rates for inflation at least every three years. RiverValley's reimbursement rates were not adjusted at any time between 2000 and 2007. The Secretary made no attempt to address this issue in the Final Order.

As a final attempt to avoid reversal, the Cabinet insists that if RiverValley is not satisfied with its Medicaid reimbursement rate, then its only remedy is to withdraw from participating in the program. We find this position to be baffling, not least because DMS's own regulations give providers a method of challenging reimbursement rates through the administrative process. The Cabinet simply refused to comply with these processes. When compelled to do so by the courts, the Secretary simply entered a new determination without any attempt to support it through the factual record or the controlling authority.

The Cabinet further contends that the courts have no authority to review such determinations, even though KRS 13B.150 expressly sets out the scope of judicial review from final orders of administrative agencies. Moreover, Section 2 of the Kentucky Constitution expressly prohibits the exercise of arbitrary power by an administrative agency.

> Whatever is contrary to democratic ideals, customs and maxims is arbitrary. Likewise, whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary, [*Sanitation Dist. No. 1 v. City of Louisville,* 308 Ky. 368, 213 S.W.2d 995, 1000 (1948) ]. No board or officer vested with governmental authority may exercise it arbitrarily. If the action taken rests upon reasons so unsubstantial or the consequences are so unjust as to work a hardship, judicial power may be interposed to protect the rights of persons adversely affected. *Wells v. Board of Education of Mercer County,* Ky., 289 S.W.2d 492, 494 (1956). Our function is to decide a test of regularity and legality of a board's action by statutory law and by the constitutional protection against the exercise of arbitrary official power. *Id.*

*Kentucky Milk Marketing and Antimonopoly Com'n v. Kroger Co.,* 691 S.W.2d 893, 899 (Ky.1985).

We would be hard-pressed to identify a clearer example of arbitrary conduct than the Cabinet's behavior in this case.

While the Cabinet argues that this Court should give deference to its interpretation of the controlling statutes and regulations, it has failed to set out any explanation for the result which it reached in this case. Considering the undisputed factual findings, the Secretary's clearly erroneous determinations of law, and the Cabinet's arbitrary and capricious behavior in this case, the circuit court correctly held that the Order must be set aside. Furthermore, we agree with the circuit court that the Recommended Order should be adopted in full, as it sets out the only complete and accurate statement of the facts and the applicable law in this case.

Accordingly, the May 30, 2012 opinion and order by the Franklin Circuit Court is affirmed.

ALL CONCUR.