RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0900-MR

JOHN RICHIE      APPELLANT

v.      APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 22-CI-001268

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND ERIC
FRIEDLANDER, SECRETARY OF
THE CABINET FOR HEALTH AND
FAMILY SERVICES      APPELLEES

OPINION
REVERSING
AND REMANDING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND KAREM, JUDGES.

COMBS, JUDGE: This case involves an administrative adjudication of a registry appeal in a case of alleged abuse and neglect of a child. In the case of an individual found by the Cabinet to have abused or neglected a child, and whose

substantiated incident was upheld upon appeal, 922 KAR[1] 1:470 requires that the name of each individual found by the Cabinet to have abused or neglected a child, and whose substantiated incident was upheld upon appeal, to be placed upon a Central Registry for at least seven (7) years.[2] Pursuant to 922 KAR 1:480, a person found by the Cabinet to have abused or neglected a child may appeal the Cabinet's investigative finding through an administrative hearing held in accordance with KRS[3] Chapter 13B.

In the case before us, the hearing officer recommended that the substantiation of neglect against Appellant, John Richie, be reversed and that his name not appear on the central registry. The Cabinet Secretary rejected the hearing officer's recommended order and issued a Final Order affirming the substantiation of child neglect and directing that Richie's name be placed on the central registry. Richie then sought review in the Jefferson Circuit Court, which affirmed the Secretary's Final Order by Opinion and Order rendered June 29, 2023. It is from that Order of the Jefferson Circuit Court that Richie has filed this appeal.

---

[1] Kentucky Administrative Regulations.

[2] "Kentucky adopted these procedures for the purpose of implementing the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. §§ 5101-5116." *W.B. v. Commonwealth, Cabinet for Health and Family Services*, 388 S.W.3d 108, 110 n.3 (Ky. 2012).

[3] Kentucky Revised Statutes.

Richie and S.F. (Mother) are the unmarried biological parents of a daughter, B.F. (Child), born in 2007. On May 7, 2020, Mother filed a Petition/Motion for Protective Order in Jefferson Family Court.[4] She alleged that on May 1, 2020, Richie had yelled at Child about her homework, then pushed her and began choking her with one hand, lifting her off the ground by her neck. On May 18, 2020, the family court conducted a hearing on Mother's petition and entered an Order of Protection/Domestic Violence Order on AOC Form 275.3. The court ordered "No unlawful contact" and checked the boxes on the Form as follows: "☒ For the Petitioner against the Respondent in that it was established, by a preponderance of the evidence, that an act(s) of ☒ domestic violence and abuse . . . has occurred and may again occur[.]" The family court's May 18, 2020, handwritten docket Order reflects that:

> P here w/her child [name deleted], Pro se. Δ appeared w/counsel. Both parties ~~appeared~~ testified & child testified. Court found acts of Violence did occur and may occur. By dad/Δ vs. child.
> →Court entering No unlawful contact for 2 years.
> →TC [temporary custody] to Mom – Parties to continue visits per Agreement.
> →Child to continue therapy w Ashley Baden.
> →Dad to take parenting classes & pay according to income.

---

[4] The family court proceedings are **not** the subject of this appeal. A certified copy of the Jefferson Family Court record was entered as Cabinet's Exhibit "1" at the administrative/registry appeal hearing. The Exhibit only includes a copy of the family court's file through May 18, 2020. It does **not** include any recorded proceedings.

## The Administrative Proceedings

By certified letter dated September 2, 2020, Father was advised that the Cabinet had received a report of suspected abuse or neglect of a child in his care as defined in KRS 600.020(1) as follows:

> The Cabinet for Health and Family Services, Department of Community Based Services has contracted with KVS Behavioral Health Systems, KY to complete DCBS investigative referrals. . . .  Through the authority and support from DCBS, KVC Behavioral and Health Services has completed this referral and finds the allegations of Risk of Harm Neglect to be substantiated based on the information reported by NM [Mother] and CH [Child] and current EPO that is in place for CH against NF [Father].  NM reports that she has witnessed NF push, slap, and hit CH on multiple occasions.  CH reports NF has hit her in her stomach, throat, and head.  KVC and DCBS consulted this care [*sic*] to determine the outcome of this case.   KVC and DCBS consulted to determine this case to be substantiated based on interviews and an active EPO out.

> The role of the Department for Community Based Services in investigating reports of child abuse or neglect is to assess the risk to the child and make efforts to protect children from further risk. The Department is not responsible for criminal prosecution and this finding is not a legal or judicial finding.  This finding may be the basis for denial of certain rights and privileges, such as approval for foster parenting, adoption, or employment as required by state or federal law.

The letter also informed Richie of the right to request an administrative hearing to challenge the finding of abuse, risk of abuse, or neglect.

Richie appealed. By letter dated November 12, 2020, the Cabinet's Quality Advancement Branch notified Richie that it had received his CAPTA appeal invoking his right to an administrative hearing pursuant to 922 KAR 1:480.

The hearing was held on March 10, 2021, by Zoom. The Cabinet was represented by counsel and called Mother as its only witness. Richie, *pro se*, appeared and testified on his own behalf and called Jade Sims, his girlfriend, as a witness. We have reviewed the audio recording of that proceeding, which is thoroughly and accurately summarized in the hearing officer's Findings of Fact, Conclusions of Law, and Recommended Order of March 10, 2021, which we cite in considerable detail as follows:

> The Cabinet offered certified court records from Jefferson Family Court into the record, which were entered as Cabinet Exhibit 1. **The Cabinet also offered a document titled Department for Community Based Services – Assessment into the record. The Cabinet did not offer the document through a witness. Cabinet counsel represented to the tribunal that an outside entity with whom DCBS has a contractual relationship conducted the investigation in this matter. Cabinet counsel further represented that the contract does not permit the investigator to testify at a hearing. Without a witness to provide a foundation or authenticate the document and without any basis put forward as to how the document is self-authenticating, the tribunal did not allow the document to be entered**. However, at the Cabinet's request, the tribunal made the document a part of the record by avowal.
>
> . . .

# FINDINGS OF FACT

. . .

4. In May, 2020, Mr. Richie and [Mother] lived in separate homes. They shared physical custody of [Child] . . . During the weekend of May 1, 2020, [Child] was staying with Mr. Richie. . . . when he received notice that [Child] had been turning in empty assignments at school. When he discovered this, he and [Child] argued. [Child] lunged towards him with her arms outstretched. Mr. Richie swatted her arms away. (Testimony of John Richie.)[5]

. . .

6. [Child] returned to her mother's home on Sunday, May 3, 2020. While there, [Child] reported that she and her father had argued over her report card and that he had choked her. Specifically, [Child] reported that Mr. Richie choked her with one hand and lifted her off of the ground by her neck. (Testimony of [Mother]; Cabinet Ex. 1.)

7. On May 7, 2020, [Mother] filed, on [Child's] behalf, a Petition for a Protective Order in Jefferson Family Court against John Richie. The Court entered an Order dated May 18, 2020, which stated that [Child], John Richie, and [Mother] all appeared and testified. **The Court found that "acts of violence did occur" by Richie versus the child. The Court did not make specific findings on this issue. The Court did not make a finding that abuse or neglect of a child, pursuant to KRS 600.020 occurred**. However, the Court concluded that domestic violence and abuse

---

[5] The references in parenthesis to the record are original.

occurred.[6]  The Court entered a "no unlawful contact" order against Richie which is in effect until May 2022. (Cabinet Ex. 1.)

8. The Cabinet . . . issued a notice dated September 2, 2020, to Mr. Richie informing him that the Cabinet had substantiated child neglect against him.  The notice stated that the Cabinet received reports on January 27, 2020, and May 11, 2020, that he had abused or neglected a child in his care.  Specifically, the Cabinet found that Mr. Richie had pushed; slapped; hit in the stomach, throat and head; and "put his hands on" [Child].  Though not specifically articulated in the notice, it appears that the allegations of putting his hands on [Child] pertained to an incident where the Cabinet found Mr. Richie choked [Child] with one hand and raised her off the floor by her neck.  The notice stated that allegations of "risk of harm neglect" had been substantiated based on interviews with [Mother] and [Child] and based on an active EPO against Mr. Richie.  (September 2, 2020, Substantiation Letter; Cabinet Ex. 1.)

. . .

## CONCLUSIONS OF LAW

1. The issue before this tribunal is whether John Richie engaged in conduct that constitutes abuse or neglect under KRS 600.020(1).  Under that statute, an "abused or neglected child" is a child whose health or welfare is harmed or threatened with harm when:

(a) His or her parent . . . :

. . .

---

[6] In a footnote, the hearing officer explained that "KRS Chapter 403 governs domestic violence-based protective order proceedings."

**2. Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means**[.]

. . .

2. Under KRS 600.020(49), "[p]hysical injury" is defined as substantial physical pain or any impairment of physical condition.

3. Pursuant to KRS 13B.090(1), hearsay evidence may be admissible, if it is the type of evidence that reasonable and prudent persons would rely on in their daily affairs, but it shall not be sufficient in itself to support an agency's finding of fact unless it would be admissible over objection in a civil action. In other words, hearsay evidence may be considered with regard to its ability to confirm or refute other substantial evidence in the record, but the statements themselves may not solely be relied upon as the basis for a finding of fact, unless they would be admissible over objection in a civil action.

4. The burden of proof in this case is on the Cabinet to establish by a preponderance of the evidence that John Richie engaged in behavior constituting neglect of [Child]. A preponderance of the evidence is "evidence . . . sufficient to conclude that it is more likely than not that an alleged perpetrator committed an act of child abuse or neglect as defined by KRS 600.020(1)."

. . .

7. As a preliminary legal matter, the tribunal notes – the Cabinet offered the domestic violence court record into the record at the administrative hearing and it was entered into evidence. . . . Considering that the Cabinet did not argue that the tribunal should be bound by the Family Court's findings, and considering that the Cabinet

put on evidence, via witness testimony, of the alleged choking incident and its aftermath, the tribunal does not defer to the Family Court's findings and will instead make its own findings based on the testimony and evidence presented at the CAPTA hearing.

8. Per the substantiation notice, the Cabinet determined that Mr. Richie has pushed, slapped, hit, and otherwise "put his hands on" his child . . . .  Though not specifically stated in the notice, it appears that [those] allegations . . . pertained to an incident where the Cabinet alleges Mr. Richie choked [Child] with one hand and raised her off the floor by her neck.  Turning first to the most serious allegation, that of choking, [Child] did not testify at the hearing.  [Mother] testified that she was not present at the time of the incident but that two days later, she observed light markings on [Child's] neck.  When asked whether she testified about the markings in the Family Court proceeding held in 2020, [Mother] stated she did not recall.  John Richie testified that [Child] lunged at him and he swatted her arms away.  He denied any further physical interaction.

9. The tribunal concludes that the Cabinet did not meet its burden as to the choking allegation.  The only witness with first-hand knowledge of the events was John Richie, who denied the allegations.  [Child's] statements, as recounted by [Mother], are hearsay that would not be admitted over objection in a civil action and will not be relied upon here.  Finally, overall, the tribunal assigns John Richie's testimony more weight than [Mother's], as she often had difficulty recalling important details of events.

10. Regarding the substantiation notice allegations that Mr. Richie pushed and slapped [Child], there was insufficient evidence presented to support a finding.  **[Mother] testified that she had not witnessed Mr. Richie engaging in such conduct**.  The Domestic Violence Petition contained a statement that Mr. Richie

pushed [Child] but that statement is hearsay that would not be admissible over objection in a civil action and will not be relied upon here.

11. Regarding the substantiation notice allegations that Mr. Richie hit [Child] in her stomach, throat, and head, there was no evidence presented at the hearing that Mr. Richie did so and thus, the Cabinet did not meet its burden on this issue. [Mother] testified that on one occasion, [Child] swung at Mr. Richie and that he swung back and hit her in the arm. **[Mother] was unable to identify a timeframe of when this occurred, just that it was at least two years ago and that it could have been over four years ago.**[7] Mr. Richie testified that he would sometimes play fight with [Child] but denied the incident as described by [Mother]. The tribunal assigns Mr. Richie's testimony more weight and concludes there is insufficient evidence of record to support a finding that Mr. Richie hit [Child] in the arm.

12. In summary, in terms of physical contact between Mr. Richie and his daughter, the record demonstrates only that Mr. Richie swatted away [Child's] arms when she lunged at him. The tribunal concludes that this conduct did not rise to the level of child neglect under the law. The action did not create a risk of physical injury (a risk of substantial physical pain or impairment of physical condition) to [Child].

(Bold-face emphases original) (footnote omitted).

---

[7] Mother testified that it had been **more than two years** since she had been with both Richie and Child together. Since then, the information that Mother had was based upon Child's reports.

The hearing officer recommended that the substantiation of neglect against Richie be reversed and recommended that his name should not appear on the Central Registry.

By Final Order filed February 15, 2022, the Cabinet Secretary rejected the hearing officer's March 22, 2021, Recommended Order; affirmed DCBS's findings/substantiation of child abuse and/or neglect; and ordered that Richie's name be placed on the Central Registry. The Secretary adopted and incorporated the hearing officer's Findings of Fact (Numbers 1-9) and Conclusions of Law (Numbers 1-6); it rejected Conclusions of Law (Numbers 7-12). The Secretary concluded that the Cabinet met its burden of establishing that Richie had committed neglect as defined in KRS 600.020(1)(a)2. as follows:

> Based on the facts presented at the hearing, the Cabinet met its burden. The Hearing Officer chooses to establish a different set of facts than the facts established in Jefferson Circuit Court. It is questionable whether the Hearing Officer can make this leap, based alone on the Hearing Officer's interpretation that it was not properly presented, but the Secretary will not address this issue at this time. . . .
>
> It is well established that an exception to the hearsay rule is made for public records. *See Kentucky Rule of Evidence 803*. The court order at question is a public record. It is without question a solid basis of fact evidence, and not hearsay here. As such, the assignment of lower weight than Mr. Richie's testimony is misguided. The facts established by the Jefferson Circuit Court that "acts of violence did occur" by Appellant versus the child, combined with the substantiation

established by the Agency's investigation, which included corroborating interviews[8] from [Mother] and [Child], all amount to a preponderance of the evidence to overcome the evidence presented by Appellant. The evidence presented by Appellant to the contrary is testimony denying the incident. This is not enough when weighed against the evidence presented by the Agency. As such, the Agency met its burden with a preponderance of the evidence showing Appellant committed neglect as envisioned by KRS 600.020(1)(a)(2).

## The Circuit Court Appeal

Richie appealed to the Jefferson Circuit Court. By Opinion and Order entered on June 29, 2023, the circuit court affirmed the Secretary's Final Order upon concluding that it was supported by substantial evidence as follows in relevant part:

> The standard of review . . . when the decision . . . is in favor of the party with the burden of proof or persuasion, is "whether or not the agency's decision is supported by substantial evidence." . . . The Cabinet had the burden of proof at the hearing, so this Court need only determine if the Cabinet's decision is supported by substantial evidence.

> . . . Specifically, the Secretary afforded more weight to the Family Court order of May 18, 2020 than the Hearing Officer did. In that order, the Family Court found that acts of violence from Mr. Richie to [Child] did occur and may re-occur. Notably, this was the only proceeding in

---

[8] As noted above, the Cabinet's investigative summary (the DCBS Assessment) was ***not*** admitted into evidence at the hearing -- but rather was admitted as an avowal exhibit. The Secretary's Final Order does not address this discrepancy.

the record that this Court could find where [Child] testified herself.[9] . . .

. . .

The Court rejects the Plaintiff's argument that the Secretary impermissibly relied upon the findings of the related Family Court proceeding. Specifically, the Plaintiff contends that the Family Court's finding that "acts of violence did occur and may occur" was not actually a finding of fact but a conclusion of law. This Court disagrees and reads that record plainly to state exactly what it says. The Court is uncertain how that finding could be construed as anything but a factual finding.

On July 25, 2023, Richie timely filed a Notice of Appeal to this Court.

**This Appeal**

Richie raises several issues on appeal. We first address his arguments: that the Cabinet failed in its burden of proof, that the Secretary's Final Order is not based upon substantial evidence, and that it fails to provide sufficient explanation as to why it departed from the hearing officer's recommendation.

Kentucky Courts have long held that judicial review of administrative action is concerned with the question of arbitrariness. . . . Unless action taken by an administrative agency is supported by substantial evidence it is arbitrary. . . .

. . .

---

[9] The Child's testimony is not of record. As noted above, the family court record, which the Cabinet entered as Exhibit "1" at the administrative/registry appeal, does ***not*** contain a recording of the hearing on Mother's motion for a protective order.

-13-

During an administrative hearing on an allegation of neglect, the Cabinet bears the burden of proving neglect occurred by a preponderance of the evidence. . . . [T]he evidence must be sufficient to conclude that it is more likely than not that an alleged perpetrator committed an act of child . . . neglect[.] . . . Specifically, evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men.

*Department for Community Based Services, Cabinet for Health and Family Services v. Baker*, 613 S.W.3d 1, 6-7 (Ky. 2020) (internal quotation marks and footnotes omitted).

This Court explained in *Commonwealth, Cabinet for Health and Family Services v. RiverValley Behavioral Health*, 465 S.W.3d 460 (Ky. App. 2014) as follows:

> KRS 13B.120(2) grants the Secretary broad discretion to "accept the recommended order of the hearing officer and adopt it as the agency's final order, or . . . [to] reject or modify, in whole or in part, the recommended order, or . . . [to] remand the matter, in whole or in part, to the hearing officer for further proceedings as appropriate." However, where the Secretary chooses to reject or modify the hearing officer's conclusions, the final order "shall include separate statements of findings of fact and conclusions of law." KRS 13B.120(3). Although the Secretary is not required to refute every finding of fact and conclusion of law made in the recommended order, the **final order must articulate a rationale for departing from the recommendation which is sufficient to explain the reasons for the deviation and to allow meaningful appellate review**.

*Id.* at 467-68 (emphasis added).

In the case before us, the Secretary's Final Order states that the hearing officer chose to "establish a different set of facts than the facts established in Jefferson Circuit Court." It also recited that it was "questionable whether the Hearing Officer can make this leap based alone on the Hearing Officer's interpretation that it was not properly presented, but the Secretary will not address this issue at this time." This statement falls fatally short of the Secretary's mandatory burden of articulating "a rationale for departing from the [hearing officer's] recommendation" as set forth in *Commonwealth, Cabinet or Health and Family Services*, *supra*. Consequently, it does not allow for meaningful appellate review.

The Final Order announced in wholly conclusory fashion as follows: that "[t]he facts established by the Jefferson [Family] Court that 'acts of violence did occur' . . . combined with the substantiation established by the Agency's investigation, which included corroborating interviews from [Mother and Child], all amount to a preponderance of the evidence to overcome the evidence [Richie] presented . . . ."

With respect to the "facts" allegedly established in family court, Mother, Child, and Richie testified at the May 18, 2020, DVO hearing. However, as noted above, the recorded proceeding was ***not*** made a part of the administrative record in the case now before us. While the family court found that acts of

violence did occur, it did not make **any specific findings** regarding the testimony presented at the DVO hearing, nor did it indicate the basis for its conclusion. The family court did not make a finding that abuse or neglect of a child pursuant to KRS 600.020 occurred.

Nonetheless, the Secretary's Final Order considered the family court's order to be "a solid basis of fact evidence." On appeal, the Jefferson Circuit Court construed the language that "acts of violence did occur and may occur" as a factual finding. However, the family court's order does **not** contain **any findings** of basic evidentiary facts. It only recites the statutory language of KRS 403.740(1) ("Following a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order[.]").

> A finding which consists of nothing other than a repetition of the legal requirements as set out by a statute fails to meet the requirements of due process, in that such finding does not contain sufficient adjudicative facts to permit a court to conduct a meaningful review of the proceeding for the purpose of determining the question of whether the [Agency's] action . . . has or has not been arbitrary.

*Caller v. Ison*, 508 S.W.2d 776, 776-77 (Ky. 1974). We have no idea what evidence the family court relied upon in issuing its May 18, 2020, DVO/No Unlawful Contact Order pursuant to KRS Chapter 403. We cannot presume or assume that it provides a substantial evidentiary foundation to support a

-16-

determination that Richie engaged in conduct that constitutes abuse or neglect under KRS 600.020(1) in the case before us.

In addition to the family court Order, the Secretary's Final Order also appears to have considered the "substantiation established by the Agency's investigation which included corroborating interviews" from Mother and Child. At the administrative/registry appeal hearing, the Cabinet sought to introduce the Cabinet Investigative Summary (the DCBS Assessment) which initiated the action. But, as set forth in the Hearing Officer's Findings of Fact, Conclusions of Law, and Recommended Order, the DCBS Assessment was not admitted because "[w]ithout a witness to provide a foundation or authenticate the document and without any basis put forward as to how the document is self-authenticating, the tribunal did not allow the document to be entered." The hearing officer granted the Cabinet's motion to enter the DCBS Assessment as an avowal exhibit.

The Secretary's Final Order fails to address this issue. We cannot determine if it omitted to do so by oversight or if the Secretary's Final Order disagreed with the hearing officer's evidentiary ruling. Regardless, we believe that the hearing officer's ruling was soundly reasoned and was substantially based on the evidence properly before her and that the DCBS Assessment was properly

excluded.[10]  "KRE 803(6) requires foundation testimony from a 'custodian or other qualified witness.'"  *Prater v. Cabinet for Human Resources, Commonwealth of Ky.*, 954 S.W.2d 954, 958 (Ky. 1997).

In light of our review and determinations, we do not reach Richie's remaining arguments.  We conclude that the Secretary's Final Order is arbitrary because it is not supported by substantial evidence and that it is also deficient in articulating the rationale for departing from the hearing officer's recommendation.

Accordingly, we are compelled to reverse the June 29, 2023, Opinion and Order of the Jefferson Circuit Court and direct that it remand this case back to the Cabinet to reinstate the hearing officer's Findings of Fact, Conclusions of Law, and Recommended Order as the Final Order.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| John H. Helmers, Jr. | Erika Saylor |
| Melina Hettiaratchi | Louisville, Kentucky |
| Louisville, Kentucky | |

---

[10] "KRS Chapter 13B grants hearing officers considerable discretion in the admission and exclusion of evidence.  *See* KRS 13B.090(1).  Accordingly, we will reverse a hearing officer's evidentiary rulings only for an abuse of discretion."  *Drummond v. Todd Cnty. Bd. of Educ.*, 349 S.W.3d 316, 323 (Ky. App. 2011).