62 S.W.3d 370 (2001)
COMMONWEALTH OF KENTUCKY CABINET FOR HUMAN RESOURCES n.k.a. Cabinet for Families and Children, Viola Miller, Secretary; and Commonwealth of Kentucky, Department of Personnel, n.k.a. Personnel Cabinet, Carol Palmore, Secretary, Appellants,
v.
Patricia BRIDEWELL; Jeanette Hardison; Ruth E. Barker; Alison F. Schaefer; Martha L. Lyles; Judy C. Taylor; Tiffany Thomas; Deborah L. Casey; Michael S. McKenney; Joan E. Hillen and Kentucky State Personnel Board, Appellees.
No. 1999-SC-0857-DG.
Supreme Court of Kentucky.
December 20, 2001.
*371 Cynthia Kloeker, Cabinet for Human Resources, Covington, Terry L. Morrison, Cabinet for Human Resources, Office of Counsel, Daniel Egbers, General Counsel, Personnel Cabinet, Frankfort, Counsel for Appellants.
Tom Blankenship, Benton, Patricia Bridewell, Beaver Dam, Steven G. Bolton, *372 Kentucky Personnel Board, Frankfort, Counsel for Appellee.
WINTERSHEIMER, Justice.
This appeal is from an opinion of the Court of Appeals which affirmed a decision of the Franklin Circuit Court which had found that certain employees of the Cabinet for Families and Children were entitled to salary increments from the State Employee Salary Equity Fund pursuant to the 1990-1992 and 1992-1994 budget bills.
The questions presented by the Cabinet are whether the Court of Appeals and the circuit court erred in interpreting the term "part-time employee" in the context of the 1990 and 1992 budget bills and violated the agreement in circuit court that this case and two unpublished Court of Appeals opinions in Cabinet for Human Resources v. Spencer (93-CA-1071-MR) and Cabinet for Human Resources v. Sanders (93-CA-2127-MR) contained similar facts and issues of law; whether the circuit court and Court of Appeals erred in determining that the Kentucky Personnel Board had jurisdiction to interpret the meaning of the budget bill and budget memorandum and whether the unpublished decisions in Spencer and Sanders, supra, correctly distinguished the difference between permanent part-time and permanent full-time employees in regard to the budget bill and budget memorandum.
The appellees frame the issues as follows: whether there was substantial evidence to support the decision of the Board to award the appellees the salary increment granted in the 1992 budget bill; whether the Personnel Board had proper jurisdiction to determine whether an employee was a part-time or full-time employee; and whether the other issues raised by the Cabinet are properly preserved for appellate review.
The employees were hired by the Cabinet for Families and Children (then known as the Cabinet for Human Resources) in the Child Support Enforcement Division on a permanent part-time basis. Most employees contend they were told by their supervisors that the classification was merely for compliance with internal regulations and they would have the same rights and benefits as full-time employees. The employees were required to work 37.5 hours per week or to use accumulated sick leave or annual leave to compensate for working less than 37.5 hours per week. The only difference between these employees and permanent full-time employees is how they are paid overtime. After the employees, all of whom earned less than $20,000 per year, were denied the Equity Fund pay increments awarded to permanent full-time employees, they appealed to the Personnel Board.
Citing KRS 48.500, the Cabinet argued that the Personnel Board lacked jurisdiction to hear the matter because it required interpretation of a branch budget bill. The hearing officer for the Personnel Board determined that the Board had jurisdiction over this matter pursuant to KRS Chapter 18A. The hearing officer concluded that the clear language of the budget bill stated that only "permanent full-time" employees were entitled to the increments and the employees were not eligible because they were classified as "permanent part-time" employees.
In the final order of the Board entered February 18, 1993, the Board agreed with the hearing officer that the refusal by the Cabinet to pay the same salary increments to all employees who were required to work 37.5 hours per week, constituted a penalization. However, the Board altered the ruling by the hearing officer and held that the employees in question were full-time de facto employees and thus would be *373 entitled to the salary increase. The Franklin Circuit Court agreed with the Board's reasoning and affirmed. The Court of Appeals also affirmed the decision. This Court granted discretionary review.
The identical issue presented here was before this Court in a motion for discretionary review in Linda Spencer and Franda Sander v. Cabinet for Human Resources (94-SC-943-D). This case was held in abeyance in Franklin Circuit Court pending a final disposition of the Spencer case. In its 1994 opinion in Spencer, the Court of Appeals reversed the circuit court judgment in favor of the employees and rejected the de facto permanent full-time classification. It held that the legislature was "fully cognizant of the legitimate and viable distinction between permanent part-time and permanent full time" and "clearly and unambiguously" directed that the salary increment be provided only to permanent full-time employees. The original discretionary review was denied. The Personnel Board, an indispensable party, had not been named in the motion.
The case presented to us at this time involves two different interpretations of the budget bills by the Court of Appeals in unpublished decisions.

I. Scope of Review/Substantial Evidence
The Franklin Circuit Court and the Court of Appeals correctly determined that there was substantial evidence to support the decision of the Personnel Board in awarding the appellees the salary increment granted in the 1992 budget bill.
It is the function of this Court to ensure that the decision of an administrative agency is supported by substantial evidence. We are not permitted to retry the case or to review the evidence de novo. Kentucky State Racing Comm'n v. Fuller, Ky., 481 S.W.2d 298 (1972). Bowling v. Natural Resources and Environmental Protection Cab., Ky.App., 891 S.W.2d 406 (1994), states that the test for substantial evidence is whether, when taken alone or in light of all the evidence, it has sufficient probative value to induce conviction in the minds of reasonable men. If the court finds the correct rule of law was applied to facts supported by substantial evidence, the final order of the agency must be affirmed. Commonwealth, Dept. of Education v. Commonwealth, Ky.App., 798 S.W.2d 464 (1990).
We find the attempt by the Cabinet to distinguish the case of Bunch v. Personnel Board, Ky.App., 719 S.W.2d 8 (1986), unconvincing. Here, the appellees worked full-time hours and representations were made to them by their supervisors that they would be part time in name only, and that they would receive complete full-time benefits. In Bunch, supra, the employee was hired as a part-time cook; he completed his probationary period and began working a full-time schedule, 37.5 hours per week. His position was discontinued and he was advised to resign the part-time position and take the same job but at a full-time classification. The Court of Appeals determined that although Bunch was classified as a part-time employee, he had actually worked full time for over two years, and thus he could not be forced to go through a second probationary period for the same job. The court looked past the form of the job classification to the substance of the job requirements. Courts can look past technical classifications and prevent the Cabinet from arbitrarily denying employees' rights and benefits to which they are entitled under a specific fact pattern. We endorse the conclusion reached by the Court of Appeals in Bunch. There was substantial evidence to support the findings of the Personnel Board, and it correctly applied the applicable law.

*374 II. Interpretation of Budget Bill
The Cabinet argues the Board was not authorized to interpret budget bills. The employees claim that the budget bills are irrelevant and the Board is only interpreting its enabling statute. We must reject the argument of the Cabinet. The Personnel Board had appropriate jurisdiction to determine whether an employee was a part time or full-time employee pursuant to the authority of KRS 18A.095. That statute sets forth the framework for addressing the rights of employees who are penalized. KRS 18A.005(7) defined penalization as follows:
Penalization shall include, but not be limited to, demotion, dismissal, suspension, fines and other disciplinary actions, involuntary transfers, salary adjustments, any action that diminishes the level, rank, discretion or responsibility of an employee without proper cause, including a reclassification or reallocation in the abridgement or denial of the other rights granted to state employees.
The Cabinet, when it denied the increment to qualified state employees, abridged their rights, and denial of those rights was a penalty. Consequently, the Personnel Board had the authority to determine the actual classification and status of the employees in question. See Bunch, supra.
KRS 18A.005(13) defines an employee as "a person regularly appointed to a position in the state's service for which he is compensated on a full time or part time basis." The terms "full time" and "part time" were not defined at the time the action was taken by the Cabinet. We recognize that amendments to KRS 18A.005, which became effective July 15, 1998, added Section 15 as a definition for full-time employees and Section 20, as a definition for part-time employees. It should be noted that the budget bills in question did not define "permanent full-time employees."
It was unnecessary for the Personnel Board to actually interpret the budget bill or budget memorandum in order to determine whether the employees were "de facto full-time employees" or otherwise. The Board only needed to look to the hours worked and the work performed which was a determination independent of the provisions of the budget bill.

III. Issues Not Raised
The Cabinet waived its right to raise issues that were not considered by the Court of Appeals. The reference to the decisions in Spencer and Sanders, and the problems caused by the apparent conflict have been tolerated by this Court as necessary to decide the total framework in which this case should be decided. However, because these decisions have never been published, they cannot be cited as authority pursuant to CR 76.28(4)(c). Moreover, these cases are different because each employee had an uncommon employment experience, circumstances and employment records.
It is the decision of this Court that both the Franklin Circuit Court and the Court of Appeals were correct when they found that there was substantial evidence to support the decision of the Personnel Board awarding the appellees salary increments from the State Employee Salary Equity Fund pursuant to the 1990-92 and 1992-1994 budget bills.
GRAVES, JOHNSTONE and STUMBO, JJ., concur.
COOPER, J., files a separate dissenting opinion in which LAMBERT, C.J., and KELLER, J., join.
COOPER, Justice, Dissenting.
In an obvious attempt to limit the number of personnel that could be employed *375 by the executive branch of government, the 1982 General Assembly enacted what is now compiled as KRS 18A.010(2):
The total number of permanent full-time personnel employed in agencies of the executive branch shall not exceed thirty-three thousand (33,000).
1982 Ky. Acts, ch. 381, § 8.
In what appears to have been an attempt to circumvent this limitation, the Cabinet for Human Resources, n.k.a. Cabinet for Families and Children, hired these Appellees and classified them as permanent part-time employees, but with the same pay and benefits as permanent full-time employees. Some of these "part-time" employees were employed at salaries of $20,000.00 or less per year, others at more. The Personnel Board has found, as a fact, that Appellees were told by their supervisors when they were hired that they would be classified as "permanent part-time employees" so as to comply with "internal regulations," but that they would be treated as full-time employees and would receive all benefits and rights afforded to full-time employees. Appellees were, in fact, treated as full-time employees and received, at the time they were hired, all benefits and rights afforded to personnel classified as permanent full-time employees.
In the 1990 budget bill, the General Assembly created the State Employee Salary Equity Fund and appropriated to it $8,000,000.00 for fiscal year 1990-91 and $13,000,000.00 for fiscal year 1991-92. 1990 Ky. Acts. ch. 514, Part III, § 20. The purpose of the Fund was to award salary increases of $1,000.00 on September 1, 1990 and $500.00 on September 1, 1991 to each permanent full-time employee in grades two through nine; and salary increases of $600.00 on September 1, 1990 and $400 on September 1, 1991 to each permanent full-time employee in grades ten through seventeen, all in addition to the annual five percent (5%) increase provided in KRS 18A.355(1).
In its 1992 budget bill, the General Assembly established the Salary Enhancement Fund providing salary increases with an annualized value of $360.00 for fiscal year 1992-93 for all permanent full-time classified employees whose salaries on July 1, 1992 were $20,000.00 or less per annum. 1992 Ky. Acts, ch. 462, part IV, § 4. To fund the Salary Enhancement Fund, the General Assembly appropriated to the Department of Personnel $1,300,000.00 for fiscal year 1992-93 and $2,700,000.00 for fiscal year 1993-94. Id., Part IA, para. 12d.
The issue in this case is whether the General Assembly, by these enactments, intended to award these salary increases to Appellees.
Presumably, the appropriations made by the General Assembly for the Salary Equity Fund and the Salary Enhancement Fund were calculated according to the number of state employees eligible to receive those benefits, i.e., employees classified as permanent full-time employees (not to exceed, of course, 33,000 in the executive branch). Since Appellees were not classified as permanent full-time employees, no funds were appropriated for them, and they did not receive any salary increases from either fund. They filed a complaint with the Personnel Board claiming that, as de facto permanent full-time employees, they were entitled to the salary increases. The Personnel Board agreed.
Of course, the Personnel Board has no authority to order the General Assembly to appropriate funds for salary increases. Instead, the Board simply ordered the Cabinet for Human Resources to pay these salary increases out of unspecified funds appropriated to it for other purposes. The Franklin Circuit Court, the Court of Appeals, and now this Court have affirmed that order. That means that these salary *376 increases, which were neither authorized nor the subject of an appropriation by the General Assembly in either the 1990-91 or 1992-93 budget bills, will be paid from funds that have been designated in the 2000-01 budget bill for social insurance, medicaid services, employment services, health services, mental health/mental retardation services, social services, administration and program support, handicapped children, and/or health economics control. Since these salary increases have been in effect since 1990 and 1992 and will continue to be compounded annually by the annual percentage increments authorized by KRS 18A.355(1), this order effectively requires the Cabinet to continue these payments for so long as Appellees remain employed, or until the General Assembly appropriates additional monies to fund these salary increases that it did not intend to fund in the first place.
I am unaware of any statute authorizing the Personnel Board to order funds appropriated by the General Assembly for one purpose to be expended for another, unrelated purpose. Certainly, KRS 18A.075, KRS 18A.0751 and KRS 18A.095 do not provide such authority. Thus, this case could be reversed solely because the Personnel Board exceeded its authority in issuing the order from which this appeal was taken.
However, this case should also be reversed on the merits. Appellees' entire case is premised upon their claim that they were told by their supervisors when they were hired that they would receive all benefits and rights afforded to full-time employees. As noted, supra, Appellees did receive the same benefits and rights being afforded to full-time employees at the time they were hired. That, of course, did not preclude the General Assembly from subsequently conferring new benefits on other employees, subject to equal protection considerations not at issue here. Presumably, the General Assembly did not know when it created the Salary Equity Fund and the Salary Enhancement Fund that there were employees in the executive branch who were working full time and drawing full-time benefits, but who were classified as part-time employees. That presumption arises from my conviction that Appellant's only purpose in misclassifying Appellees was to circumvent the General Assembly's attempt to limit the number of permanent full-time employees in the executive branch. Thus, I must conclude that, when the General Assembly conferred these salary increases on permanent full-time employees, it could not have contemplated or intended that those increases would also be paid to employees, such as Appellees, who were classified as part-time employees. Appellees are not entitled to salary increases that the General Assembly did not intend to award them.
Nor is it unfair to deny Appellees these salary increases. If the Cabinet had not classified Appellees as permanent part-time employees, KRS 18A.010(2) would have precluded their being hired as state employees in the first place; thus, they would not have been entitled to any of the benefits of state employment, much less benefits subsequently bestowed by the General Assembly upon other employees classified as permanent full-time employees. What is unfair is to take money designated and appropriated for social services and give it to Appellees in the form of salary increases that were neither authorized nor the subject of an appropriation by the General Assembly.
Accordingly, I dissent.
LAMBERT, C.J., and KELLER, J., join this dissenting opinion.