DIXON, JUDGE:
Northkey Community Care (Northkey), a psychiatric children's hospital, appeals from an Order of the Franklin Circuit Court, which rejected its request for an adjustment to its Medicaid reimbursement rate. At issue in this case is the unfortunate and inevitable friction between the needs of the disadvantaged and vulnerable children of this Commonwealth and the government's efforts to spend tax dollars wisely. Such has placed Northkey squarely between the proverbial rock and its attendant hard place. The Cabinet for Health and Family Services (Cabinet), pursuant to its regulations, used a "parity adjustment factor" to reduce Medicaid reimbursement amounts to Northkey. Because we hold this methodology fails to comply with KRS [2] 204.560(2), in that it is not based on a calculation specifically related to similar psychiatric hospitals as required by the statute, it is therefore arbitrary. We therefore reverse and remand this matter to the Franklin Circuit Court.
FACTS
Northkey is a small, non-profit, inpatient psychiatric hospital in Covington, Kentucky, which has been in operation for over thirty years. It is exclusively dedicated to providing acute, short-term mental health care to children and adolescents-the vast majority of whom rely on Medicaid to pay for their care. Medicaid is a cooperative federal-state program which provides reimbursement to health care facilities and practitioners who furnish covered healthcare services to individuals deemed to be eligible for Medicaid.
In order to be paid for the specialized services it offers to these children, Northkey must seek reimbursement of the cost of treatment from the Cabinet after services have been rendered. The federal government supplies approximately 70% of the funds reimbursed, and the Commonwealth ponies up the balance. (HR[3] at 64).
The Department of Medicaid Services-a division of the Cabinet-has been tasked, pursuant to the Kentucky Medical Assistance Act, KRS 205.510 et seq. , with the responsibility for overseeing Kentucky's Medicaid program, including distribution of all federal funds. As part of these duties, the Cabinet must determine all Medicaid reimbursement rates to qualifying Medicaid providers. The legislature's intent as to distribution of these funds is set out in KRS 205.560(2), which provides *300 in relevant part, "[p]ayments for hospital care ... shall be on bases which relate the amount of the payment to the cost of providing the services or supplies." The exact meaning of these words has been hotly contested over the years.
Apparently in an attempt to carry out the authority given it by the legislature, the Cabinet promulgated regulations originally requiring a "lesser-of" reimbursement formula. Under these regulations, the Cabinet would set rates at the lesser of the calculated rate or the previous year's rate. This reimbursement method was eventually scrapped in 2007, after a judicial determination that it did not comply with the legislature's mandate in KRS 205.560.[4]
Thereafter, the Cabinet issued the current regulations which now determine how Medicaid reimbursements will be calculated. Specifically, 907 KAR [5] 1:815 § 3[6] governs payments to "In-State Freestanding Psychiatric Hospital Care," as well as to "Long-term Acute Care Hospitals," and "In-State Freestanding Rehabilitation Hospital Care." Subsection (e) requires a "parity factor equivalent" to be applied to "aggregate cost coverage," in order to determine the reimbursement rate.
In November of 2007, the Cabinet determined Northkey's base rate per diem to be $653.58, which is their actual cost of services. There is no allegation or indication that this amount is in any way inflated, but rather reflects, in fact, the actual cost of patient care. Nevertheless, applying the formula set out in its regulations, the Cabinet reduced the actual amount of Medicaid reimbursement to Northkey to $571.74 per patient, per day, to be effective November, 15, 2007. Subsequently, the Cabinet calculated Northkey's rate from July 1, 2008, to June 30, 2009, the same way with a minor adjustment for inflation. Northkey's per diem cost was calculated to be $672.34, but was paid $570.86 per day, an amount actually less than the previous year's reimbursement even after adjusting for inflation. These payments constituted 87.5% and 84.5%, respectively, of Northkey's actual costs for patient care.
Upon receiving notification of the Cabinet's reimbursement rate, Northkey requested a Dispute Resolution Meeting seeking reimbursement of its actual total costs for the periods outlined above. The request was summarily denied, however. Northkey then requested and received an administrative hearing to appeal this decision. Based upon the extensive evidence presented at this hearing, the Administrative Hearing Officer rendered a thorough twenty-six-page Recommended Order determining Northkey's reimbursement rate had been arbitrarily established. While acknowledging statutory provisions do not require 100% reimbursement of operating costs, the Hearing Officer concluded the methodology established by the Cabinet must nevertheless relate to the actual costs incurred by the provider. The Hearing Officer determined that in this case the 19.5% parity adjustment was arbitrary when applied to Northkey's base rate. The Officer further found:
The application of the adjustment to Northkey's base rate per diem has no reasonable relationship to its costs of providing services because the adjustment amount was not determined with any consideration for the actual costs for *301 operating a free-standing psychiatric facility for treatment of children and adolescents in general or Northkey in particular. It was based upon a calculation related to acute care hospitals for which a different methodology from that used for a free-standing psychiatric facility is applied to establish rates.
In the December 8, 2009 Order the Hearing Officer awarded Northkey its full allowable costs of $653.58 for the period beginning November 15, 2007, and $682.50 for the rate period beginning July 1, 2008. On December 22, 2009, the Cabinet timely filed exceptions with the Cabinet Secretary, seeking reversal of the Hearing Officer's Recommended Order.
More than two years later, on March 7, 2012, the Interim Secretary for the Cabinet finally issued a six-page Final Order reversing the Recommended Order.[7] Therein, while taking no issue with any factual finding made by the Hearing Officer, the Secretary opined that the " 'parity adjustment' ... established equivalency between acute care hospitals and private psychiatric hospitals [because] they both pay into the provider tax on their gross revenues and receive distributions based on their cost reports." Because Northkey was properly classified under the regulations, and the parity adjustment was properly applied, the Interim Secretary found there was no law, regulation or policy that would allow it any higher reimbursement rate than that provided by 907 KAR 1:815 § 3, and deduced, "[t]his meets the statutory requirements set for (sic) in KRS 205.560(1)(2)(3) and (5)."
Northkey's appeal of the Interim Secretary's Order to the Franklin Circuit Court was likewise unsuccessful. The Circuit Court summarily approved the Acting Secretary's Final Order, concluding that substantial evidence supported the order. Northkey thereafter filed its appeal with this court.
STANDARD OF REVIEW
"Basically, judicial review of administrative action is concerned with the question of arbitrariness. " American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n , 379 S.W.2d 450, 456 (Ky. 1964). "There is an inherent right of appeal from orders of administrative agencies where constitutional rights are involved, and section (2) of the Constitution prohibits the exercise of arbitrary power." Id. (internal footnotes omitted).
The scope of judicial review of administrative agency decisions is set forth in KRS 13B.150(2). Therein, the statute provides that a reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." "It is the function of [appellate courts] to ensure that the decision of an administrative agency is supported by substantial evidence. We are not permitted to retry the case or to review the evidence de novo. " Commonwealth of Kentucky Cabinet for Human Res. v. Bridewell, 62 S.W.3d 370, 373 (Ky. 2001) (citing Kentucky State Racing Comm'n v. Fuller , 481 S.W.2d 298 (Ky. 1972) ). "On factual issues, [an appellate court] reviewing the agency's decision is confined to the record of proceedings held before the administrative body and is bound by the administrative decision if it is supported by substantial evidence." Commonwealth of Kentucky Transp. Cabinet Dep't of Vehicle Regulation v. Cornell, 796 S.W.2d 591, 594 (Ky. App. 1990) (citations omitted).
*302 However, as to issues of law we have held:
The Court of Appeals is authorized to review issues of law involving an administrative agency decision on a de novo basis. Aubrey v. Office of the Attorney General, [---] Ky. App. [----], 994 S.W.2d 516 (1998). In particular, an interpretation of a statute is a question of law and a reviewing court is not bound by the agency's interpretation of that statute. Halls Hardwood Floor Co. v. Stapleton, [---] Ky. App. [----], 16 S.W.3d 327 (2000).
Liquor Outlet, LLC v. Alcoholic Beverage Control Bd., 141 S.W.3d 378, 381 (Ky. App. 2004).
ANALYSIS
Northkey raises two issues on appeal. The first and primary argument is that the Cabinet's reduction of Northkey's Medicaid reimbursement rate using the "parity factor equivalent" provided for in 907 KAR 1:815 § 3(2)(e) is arbitrary and therefore erroneous. The crux of the argument is that the regulation improperly compares psychiatric facilities like Northkey to acute care hospitals in determining the parity adjustment. Northkey contends-and the Hearing Officer agreed-the 19.5% parity adjustment is not based on any calculation specifically related to Northkey or any free-standing psychiatric hospital. Rather, Northkey argues, the parity factor is based upon a calculation related to acute care hospitals for which a different methodology is applied to establish rates.
The Cabinet's Medicaid reimbursement rates have been a continuing problem for Northkey, which has previously litigated the Cabinet's rate. Northkey first tangled with the Cabinet over rates in 2001. The Cabinet used the previously discussed "lesser-of" method to reduce Northkey's reimbursement rate to less than its actual costs. The Franklin Circuit Court in that action reversed the Cabinet's reduction, determining the Cabinet's calculations were erroneous because they did not relate to the cost of providing services as required pursuant to KRS 205.560(2). Northkey Cmty. Care v. Commonwealth of Kentucky, Cabinet for Health Servs. , Civil Action No. 03-CI-00804 (Opinion and Order entered April 15, 2004).[8]
This court has more recently weighed in on this methodology for Medicaid reimbursement to psychiatric hospitals, holding the calculations were arbitrary because they did not reasonably relate to the facility's actual costs as required by KRS 205.560. In Commonwealth of Kentucky, Cabinet for Health and Family Servs. v. RiverValley Behavioral Health, 465 S.W.3d 460 (Ky. App. 2015), another panel of this court addressed the reimbursement methodology Northkey had sued the Cabinet over in 2003. Therein, the Cabinet had frozen RiverValley's reimbursement rate for seven years without reference to its actual costs. Troublingly, in that action the Cabinet failed to even provide RiverValley an administrative hearing for over five years. RiverValley was forced to file suit in Franklin Circuit Court in order to resolve the dispute. The trial court determined RiverValley was unfairly penalized through delays caused primarily, if not exclusively, by the Cabinet. In 2013, the court eventually accepted a mediator's recommendation and ordered the Cabinet pay RiverValley over $9.5 million in additional Medicaid reimbursements for insufficient patient costs relating all the way back to 2001.
*303 On appeal, this court affirmed. It determined that the Cabinet failed to show how its regulations relating to Medicaid reimbursements were either reasonable or adequate to meet the costs incurred as required by 42 CFR [9] § 447.253(b)(1)(i). Nor did the Cabinet demonstrate how its payments were calculated on bases which related to the cost of providing services as required by KRS 205.560(2). While the decision in RiverValley did not turn upon the current regulations determining Medicaid reimbursements, we believe its analysis of the issue of reimbursement under KRS 205.560 is instructive.
The Cabinet contends the Medicaid Act affords it flexibility and authority to set Medicaid provider reimbursement rates as well as the methodologies used to calculate those rates. It further argues that these rates do not have to meet or exceed providers' actual costs. The Cabinet maintains its methodologies comply with all statutory provisions and therefore must be affirmed.
The Cabinet is correct in that there are no provisions within either 42 USC [10] § 1396, et seq., or KRS 205.560 requiring a 100% Medicaid reimbursement rate. However, this fact does not give the Cabinet carte blanche authority to determine reimbursement rate methodologies. While states may be given "wide latitude in designing, creating and administering their own respective Medicaid program,"[11] the Cabinet does not equate to a "state." It is the state legislature which determines the parameters of a state's Medicaid program. The Cabinet's authority to administer the program, and the extent to which it may do so, are determined by the legislature.[12] In Kentucky, our legislature has determined that Medicaid reimbursement rates "shall be on bases which relate the amount of the payment to the cost of providing the services or supplies." KRS 205.560(2).
So how then, in determining Medicaid reimbursement rates, does the Cabinet relate the amount of payment to the cost of providing services or supplies to a facility such as Northkey?
As previously stated, 907 KAR 1:815 § 3 governs payments to "In-State Freestanding Psychiatric Hospital Care," which includes Northkey. However, this regulation also governs Medicaid reimbursement rates to "Long-term Acute Care Hospitals," as well as "In-State Freestanding Rehabilitation Hospitals." Subsection (e) requires a "parity factor equivalent" to be applied to "aggregate cost coverage," in order to determine the reimbursement rate.
The complex "parity factor" formula is found in 907 KAR 10:825. Under this model, providers are grouped according to "clinically-similar ... services that can be expected to consume similar amounts of hospital resources" called DRGs.[13] Id. § 1(18). A DRG base payment is then determined by multiplying a hospital-specific base rate by the DRG relative weight assigned for the service. The base rate is calculated using claims data, or cost reports, for inpatient discharges paid by Medicaid during a given base year. The "relative weight" established by the Cabinet is determined by the averaging of costs *304 when treating patients in a given DRG. Acute care hospital services and rehabilitation services are considered "clinically similar" to psychiatric hospitals such as Northkey, and therefore grouped into the same DRG in determining the relative weight assigned by the Cabinet. Moreover, as noted by the Hearing Officer, the "parity adjustment" pursuant to § 3(e) is calculated based upon its methodology for acute care hospitals rather than psychiatric hospitals.
Therein lies the difficulty with the Cabinet's position. The legislative mandate to the Cabinet is that repayment of Medicaid payments must be "on bases which relate the amount of the payment to the cost of providing the services or supplies." Nowhere does the Cabinet explain how costs of providing acute care services by non-psychiatric hospitals in any way relate to the costs incurred by psychiatric facilities, especially small, specialized facilities such as Northkey. Yet both are lumped together in determining the appropriate reimbursement factor.
However, the Cabinet's own Hearing Officer determined that Northkey's services are successful by being innovative rather than similar to services provided by acute care hospitals. The Hearing Officer specifically found that:
Northkey treats patients in a manner that returns them to the least restrictive setting as quickly as possible to achieve the maximum therapeutic benefit. As psychiatric care methodology has evolved, the benefits of shorter inpatient stays, particularly for children, have gained increasing recognition. Northkey follows this model. This also benefits the Medicaid program by reducing the number of days for which it must pay, yet Medicaid's payment methodology essentially reduces Northkey's reimbursement for achieving these goals.
HO[14] at 5. In fact, the Cabinet's own witness, Tara Clark, a supervisor with the Cabinet's accounting firm, acknowledged that psychiatric care is different than acute care, "and offered that psychiatric care may be more labor-intensive than acute care." HO at 16. There is no evidence in the record reflecting acute care hospitals provide similar services to those provided by Northkey.
Nevertheless, Northkey's success has unfortunately resulted in a significant downside. The Hearing Officer noted Northkey's approach had reduced the number of inpatients from its maximum of 51 to an average census of 16-17 children. HO at 10. Obviously, fewer patients, coupled with reduced Medicaid reimbursement, have resulted in a difficult financial situation for Northkey. HO at 12. There appears to be no evidence that Northkey is somehow operated inefficiently. Nevertheless, the Hearing Officer observed that Medicaid's apparent answer to the problem was that Northkey "should increase its patient days or census to improve its cost average, regardless of the therapeutic benefit of doing so." HO at 15.
Thus, we are faced with a situation where an efficiently operated facility, offering critically needed innovative and successful services, has been penalized by the application of a rate reducing methodology which uses clinically dissimilar acute care hospitals to calculate reimbursement rates.
The Cabinet's position however, as stated by the Cabinet's Secretary in the order reversing the Hearing Officer's Recommended Decision, is that the "parity adjustment" under 907 KAR 1:013 established equivalency between acute-care hospitals and private psychiatric hospitals *305 in recognition that they both pay into the provider tax on their gross revenues and receive distributions based on their cost reports. It is entirely unclear, nevertheless, how these two factors in any significant respect render these two very fundamentally different providers sufficiently similar so as to base reimbursement rates in "parity" with one another. That both providers pay into the provider tax and receive distributions on cost reports in no way represents similarity in the services provided. Thus, just as in RiverValley , the Cabinet has made no attempt to show how its new methodology relates to Northkey's actual and allowable provider costs. See RiverValley, 465 S.W.3d at 469. Therefore, we hold the Cabinet's application of its 19.5% parity factor to Northkey is arbitrary and erroneous.
Lastly, Northkey argues the Cabinet also erroneously deducted $4.99 to the Medicaid reimbursement as a "minimum occupancy adjustment" from the costs shown on Northkey's cost reports. We agree with the Hearing Officer that this reduction is also arbitrary in that it bears no relation to Northkey's cost of providing services and "essentially deducts the amount for costs that were not incurred in the first place." HO at 23.
Accordingly, the Opinion and Order of the Franklin Circuit Court is reversed, and the matter is remanded to the circuit court for entry of an order affirming the Hearing Officer's Recommended Order.
ALL CONCUR.

Kentucky Revised Statutes.

Hearing Record.

Northkey Cmty. Care v. Commonwealth of Kentucky Cabinet for Health Servs. , Civil Action No. 03-CI-00804 (Opinion and Order entered April 15, 2004).

Kentucky Administrative Regulations.

907 KAR 1:815 § 3 was recodified to 907 KAR 10:815 § 3 effective May 3, 2011.

Pursuant to KRS 13B.120(4)(b), the Secretary is required to issue a final order within ninety days after submission of a Hearing Officer's Recommended Order.

Apparently Northkey and the Cabinet agreed to a settlement of these claims for the years this rate had been in effect. The settlement did not affect rates for subsequent years.

Code of Federal Regulations.

United States Code.

Cabinet's brief at p. 9.

As a result, the Cabinet's reliance on Douglas v. Indep. Living Ctr. of S. California, 565 U.S. 606, 132 S.Ct. 1204, 182 L.Ed.2d 101 (2012), is misplaced as California's legislature had passed legislation cutting provider reimbursements.

Diagnostic related groups.

Hearing Order.