RENDERED:  JUNE 13, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0617-MR

S.H.                                                          APPELLANT


APPEAL FROM HARDIN CIRCUIT COURT
v.            HONORABLE LARRY ASHLOCK, JUDGE
ACTION NO. 21-CI-01448


CABINET FOR HEALTH AND
FAMILY SERVICES                                         APPELLEE


## OPINION
## REVERSING, VACATING, AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND McNEILL, JUDGES.

CETRULO, JUDGE:  In a September 2021 order, the Cabinet for Health and

Family Services ("Cabinet") substantiated an allegation of neglect against

Appellant S.H. ("Mother"),[1] and placed Mother's name on the Cabinet's central

---

[1] Kentucky Rules of Appellate Procedure ("RAP") 5B(2):  "Redactions.  [Kentucky Rules of Civil Procedure] CR 7.03 applies to all actions prosecuted under these rules.  Initials or a descriptive term must be used instead of a name in cases involving juveniles, allegations of abuse and neglect, termination of parental rights, mental health, and expungements."  Mother's brief often referred to the minor children and Mother by name.  We remind counsel that compliance with these rules is required and failure to make the proper redactions could have resulted in

registry for those who have abused or neglected children ("central registry"). Mother sought review of the Cabinet's order with the Hardin Circuit Court. The circuit court affirmed the Cabinet's decision. Finding error, we reverse the circuit court, vacate the finding of neglect against Mother, and remand to the Cabinet with directions to remove Mother from the central registry.

## BACKGROUND

Mother is a school counselor/social worker. She is married with three biological children (P.H., J.H., and A.H.).[2] Her oldest child, P.H., has special needs (autism, ADHD, and mild intellectual disability), and receives "a myriad of services including weekly in-home behavioral therapy visits."[3] J.H. also has medical diagnoses that require therapy and prescription medication. The youngest child, A.H., was only three years old at the relevant time.

On October 8, 2017, Mother and her husband were in Chicago, Illinois, while their children stayed with her mother ("Grandmother"). While Grandmother was cooking dinner, A.H. found and ingested some of J.H.'s medication (the "2017 incident"). Grandmother took A.H. to the hospital for this

return of the brief for non-compliance. In the interest of expediency, we have declined to do so in this instance.

[2] Mother also has a stepchild, but that child was not in her home during the relevant timeframe.

[3] All quoted material in this Background section is from the parties' joint stipulation of facts.

"accidental medication ingestion" but "[n]o family risk factors were identified, and there were no concerns for child maltreatment."

Approximately four months later, on February 18, 2018, A.H. again ingested J.H.'s medication. On this day, Mother, her husband, and all three children had the flu. Mother's husband was out of the house and Mother needed to buy some necessities. Rather than take her sick children to the store, Mother asked one of her adult brothers ("Uncle") to watch the children. Mother was gone approximately 15 minutes, and during that time A.H. ingested J.H.'s medication (the "2018 incident"). Upon returning home and discovering the overdose, Mother immediately called 911. A.H. was transported to the hospital in critical condition but recovered. After three days, the hospital discharged A.H.

The hospital indicated this was "an accidental ingestion," but initiated its own investigation. This investigation determined that A.H. was in Uncle's care when she "got into" her brother's medication. The subsequent report stated that the home was "a wreck due to significant damage from a toilet flooding the home." Mother stated that new carpeting was being installed, and she admitted the house was then (but not regularly) in disarray.

Mother told the police that she normally kept the medications in a lock box, but she admitted that one medication was not in the lock box, on this occasion, before she left. The night before, J.H. had spent the night with

Grandmother, and his medication had been mistakenly left at Grandmother's home. When Uncle came to babysit the next day, he returned the medication to Mother's home. Unbeknownst to Mother, Uncle had placed the medication on a table where A.H. could reach it. Based on these facts, the hospital report concluded "the case met statutory criteria as a near-fatality[4] and was diagnostic for supervisory neglect."

The Cabinet opened a case plan. Mother and her family "cooperated with the Cabinet and completed all services provided and case plan tasks." After an investigation, the Cabinet substantiated claims of neglect against Mother (and *only* Mother).[5] The Cabinet found Uncle's actions did *not* constitute neglect. Mother appealed. "An individual found by the Cabinet to have abused or neglected a child may appeal the Cabinet's finding through an administrative hearing in accordance with 922 [Kentucky Administrative Regulation] KAR 1:480. Such hearings are commonly referred to as 'CAPTA appeals,' as the Child Abuse Prevention and Treatment Act (CAPTA) requires such processes for states to maintain eligibility for funding under the act." DEPARTMENT OF COMMUNITY

---

[4] The parties do not contest that this was a "near-fatality" as defined by Kentucky Revised Statutes ("KRS") 600.020(40).

[5] The Cabinet reviewed potential responsibility of Mother, her husband, Uncle, and Grandmother with regard to all of Mother's children, as to "supervision," "environment," and "risk of harm-neglect." All allegations of all forms of neglect were deemed unsubstantiated as to Mother's husband, Uncle, and Grandmother. The Cabinet deemed Mother the sole adult "substantiated" as to (a) supervision and environment neglect of A.H. and (b) risk of harm to J.H. and P.H.

BASED SERVICES, *Standards of Practice Online Manual* (Oct. 15, 2024)

https://manuals-sp-chfs.ky.gov/G2/Pages/2-2.aspx.

A hearing officer for the Cabinet ("hearing officer") handled this first administrative appeal. The parties filed a joint stipulation to the facts, as referenced above, but waived the hearing. In February 2021, the hearing officer found that the Cabinet, by and through the Department for Community Based Services, a subdivision of the Cabinet,

> satisfied its burden of proving by a preponderance of the evidence that [Mother] created a risk of physical injury to A.H.[6] by other than accidental means. Specifically, [Mother] neglected to ensure J.H.'s prescription medication was out of reach of A.H.'s reach [*sic*] before [she] left the house for a short errand. Further, [Mother] left A.H. with a caregiver who was apparently unable to provide adequate supervision to prevent A.H. from ingesting the prescription medication. This occurred in spite of A.H.'s previous history of accessing and overdosing on the same prescription medication approximately four (4) months earlier. In fact, A.H. did suffer a physical injury when she ingested prescription medication, and required hospitalization.

Thus, the hearing officer recommended the Cabinet enter a final order: 1) adopting the stipulated facts, 2) affirming the substantiation of abuse or neglect against Mother, 3) authorizing the Cabinet to place Mother's name on the

---

[6] The hearing officer made similar such findings related to P.H. and J.H., jointly.

central registry *for life*,[7] and 4) dismissing Mother's appeal. Mother filed exceptions, but the Cabinet did not file a response to her exceptions.

Six days later, the Cabinet Secretary issued a final order affirming the substantiation against Mother and adopting the hearing officer's recommendations in full without further discussion. Mother petitioned for judicial review.

The Hardin Circuit Court held a hearing in March 2024. Mother submitted a brief, but the Cabinet did not, choosing to rest on oral arguments.[8] Ultimately, the circuit court determined the finding of neglect was not arbitrary, capricious, or an abuse of discretion; affirmed the Cabinet's final order; and dismissed Mother's petition. This appeal followed.

---

[7] If an individual is found by the Cabinet to have abused or neglected a child, and whose substantiated incident was upheld upon appeal, 922 KAR 1:470 requires that the name of such individual be placed upon a central registry for at least seven years. As relevant here, the Cabinet has deemed a "near fatality related to abuse or neglect" to not be removable from the registry in the normal seven years. 922 KAR 1:470, § 2(2)(b). Here, it appears the Cabinet intends to place Mother on this registry for her natural life.

[8] During those March 2024 oral arguments, the Cabinet argued the claim of neglect was substantiated against Mother because "this is the third time one of her children overdosed on prescription medication." The Cabinet is referring to the two incidents described above (with A.H.) and a third ingestion (with P.H.) that took place nearly eight years prior, on July 19, 2010. At that time, Mother was 16 years old and attending high school while living in Grandmother's house. (Mother had become pregnant with P.H. after she was raped at 14 years old.) On that day, while 2-year-old P.H. was *in Grandmother's care*, he ingested medication that was prescribed to another family member. As a result, P.H. was taken to the hospital, administered charcoal, and admitted for observation. P.H. recovered. No claim of neglect was substantiated against Grandmother or anyone else. Shockingly, during March 2024 oral arguments, the Cabinet used this 2010 "incident" to show Mother had a pattern of failing to provide adequate supervision for her children. It is unclear why the Cabinet made such an argument given the circumstances. However, as the Cabinet does not argue the relevance of this 2010 incident on appeal, no further discussion of this event is necessary or appropriate.

-6-

## ANALYSIS

On appeal, the parties debate the sufficiency of the evidence, but also analyze the various standards of review required at each level of this administrative appeal. While standard of review is often perceived as boilerplate legalese, it should not be overlooked. In the case *sub judice*, it is the standard of review that acts as our cipher.

At the agency level, in order to substantiate a finding of neglect, the *Cabinet had the burden* of proving – by a preponderance of the evidence in the record – that Mother abused or neglected her child(ren). *See* KRS 13B.090(7). This means the evidence must have shown it was "more likely than not" that Mother committed an act of child neglect. *See* 922 KAR 1:330 § 1(14). Relevant here, an "abused or neglected child" is:

> a child whose health or welfare is harmed or threatened with harm when . . . [h]is or her parent . . . or other person exercising custodial control or supervision of the child . . . [c]reate[d] or allows to be created a risk of physical or emotional injury . . . *by other than accidental means*[.]

KRS 600.020(1)(a)2. (emphasis added). Here, the Cabinet found such a substantiation, *i.e.*, that a preponderance of the evidence (more likely than not) showed Mother created a risk of physical injury to her child(ren) by other than accidental means.

After the Cabinet substantiated a finding of neglect, subsequent judicial review by the circuit court was confined to the record. KRS 13B.150(1). In its review, the court properly recognized that it could not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. *See* KRS 13B.150(2); *see also Carreer v. Cabinet for Health & Fam. Servs.*, 339 S.W.3d 477, 484 (Ky. App. 2010) (citation omitted). In fact, the circuit court was only permitted to reverse or remand if the agency's final order was:

> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) *Without support of substantial evidence on the whole record*;
>
> (d) *Arbitrary, capricious, or characterized by abuse of discretion*;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

KRS 13B.150(2) (emphasis added).

Here, the circuit court determined that the Cabinet's finding of neglect was based on substantial evidence and therefore, not arbitrary, capricious, or an

abuse of discretion.  Strictly speaking, "[i]f there was substantial evidence to support the agency's decision, it cannot be said to be arbitrary."  *Allen v. Kentucky Horse Racing Auth.*, 136 S.W.3d 54, 59 (Ky. App. 2004) (citing *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 579 (Ky. 2002)).

However, here we find that the court's ultimate legal conclusion *was* erroneous due to (a) an improper burden shift and (b) the near-binding deference given to the Cabinet's statutory interpretation of KRS 600.020(1)(a)2.  To be clear, "[t]he Cabinet's substantiation of the allegations is not binding upon the court and has no preclusive effect in any subsequent proceeding[,]" but the circuit court nonetheless gave great deference to that substantiation.  *See K.H. v. Cabinet for Health & Fam. Servs.*, 358 S.W.3d 29, 32 (Ky. App. 2011).

Our task is to analyze those two errors within the context of our own standard of review.  Similar to the circuit court, we review an administrative action for arbitrariness.  *Dep't for Cmty. Based Servs., Cabinet for Health & Fam. Servs. v. Baker*, 613 S.W.3d 1, 6 (Ky. 2020) (quoting *Wasson v. Kentucky State Police*, 542 S.W.3d 300, 302 (Ky. App. 2018)).  Again, an agency conclusion is arbitrary if it is not supported by substantial evidence.  *Id.*; *N. Kentucky Mental Health-Mental Retardation Reg'l Bd., Inc. v. Commonwealth*, 538 S.W.3d 298, 301 (Ky. App. 2017) (citation omitted).  Substantial evidence is "evidence of substance and

relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Baker*, 613 S.W.3d at 7 (citing *Kentucky Ret. Sys. v. Bowens*, 281 S.W.3d 776, 780 (Ky. 2009)).

While we consider the sufficiency of the evidence of the neglect charge against Mother through the lens of arbitrariness, we do so while applying a *de novo* standard of review to questions of law, such as statutory interpretation. *Seeger v. Lanham*, 542 S.W.3d 286, 290 (Ky. 2018) (citation omitted) (statutory interpretation is subject to *de novo* review with no deference to the analysis of the lower courts.). "[C]ourts have the ultimate responsibility in matters of statutory construction and the reviewing court is not bound by an administrative body's interpretation of a statute." *Commonwealth, Cabinet for Health and Family Services v. River Valley Behav. Health*, 465 S.W.3d 460, 468 (Ky. App. 2014).

Contrary to the Cabinet's final order, the agency *did not* satisfy its burden of proving by a preponderance of the evidence (more likely than not) that Mother created a risk of physical injury to her child(ren) by other than accidental means.

Mother has consistently argued:

This [2018] event was an incident which occurred when [Mother] was not present, and was under the care of another adult. There was no reason for [Mother] to suspect that that other adult [Uncle] was not adequately capable of providing a minimally safe care and environment, particularly for the 15 minutes or so that the child was in

-10-

his care. Tellingly, the actions of that caretaker adult during his brief babysit were also not themselves deemed by the Cabinet to have constituted any form of neglect.

The Cabinet did not disprove, rebut, or contest these assertions. It was the *Cabinet's burden* to show – by a preponderance of the evidence – that the ingestion was "by other than accidental means[.]" KRS 600.020(1)(a)2.; KRS 620.100(3) (burden on complainant); *Baker*, 613 S.W.3d at 7 (citing KRS 13B.090(7)) ("During an administrative hearing on an allegation of neglect, the Cabinet bears the burden of proving neglect occurred by a preponderance of the evidence."). The Cabinet failed to do so. In fact, the Cabinet presented *absolutely no evidence* that this was anything other than an accident, let alone "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *See Baker*, 613 S.W.3d at 7 (citation omitted).

The Cabinet did not show Mother knew the medication was on the table and within reach of A.H.; that the medicine being within reach of A.H. was anything more than a mere oversight; that Uncle was incapable of monitoring the children for 15 minutes;[9] that Mother should have known Uncle was incapable of monitoring the children for 15 minutes; that going to the store for necessities was

---

[9] On appeal, the Cabinet erroneously argued that Uncle was the caregiver for both the 2017 and 2018 incidents. He was not, as established by the joint stipulation of facts. *Grandmother* was the caregiver at the time of the 2017 ingestion.

-11-

somehow an improper act; that the home was often or repeatedly in poor condition; or that Mother was inattentive to the children, their medications, or their medical needs. The Cabinet appears to argue that because A.H. overdosed, then *by default*,[10] Mother must have acted neglectfully, but not all injuries correlate to and/or mandate a finding of neglect. *See, by example*, *Baker*, 613 S.W.3d 1 (despite sexual touching that occurred between students during an afterschool program, our Supreme Court held the Cabinet did not meet its burden of proof and reversed the Cabinet's substantiation of neglect).

The Cabinet argues A.H.'s medication ingestion four months prior should have put Mother on notice of the child's tendencies/impulse to ingest medication, and therefore, Mother should have taken steps to safeguard the children's medicine. Yet, Mother *did* take extra precautions to safeguard the children's medicine: she kept it in a lock box. On this fateful night, the family was all sick, the household needed necessities, Mother was the lone adult at home, and Mother called Uncle (an adult whom she had no reason to believe was incapable of watching the children) to stay at the home for 15 minutes. The house was uncommonly in disarray due to the flooring installation, and items in the house were not in their usual place. When Uncle arrived, Mother did not know he

---

[10] The hearing officer found that Uncle was "apparently" unable to provide adequate supervision by virtue of the ingestion. That "apparent" mistake then somehow shifted fault to Mother.

-12-

brought the medicine and therefore did not put it in the lockbox with the other medication before she left for her "short errand." The Cabinet did not and does not contest those facts nor show – *in any way* – how this ingestion was anything other than an accident.

By the Cabinet's rationale, a parent could be exposed to a claim of neglect if his/her child is injured at school, with a babysitter, or at a daycare, even if the caregiver was not found to have acted neglectfully and/or the parent had no reason to believe the caregiver was an inappropriate supervisor. Such a broad application of the statute exceeds the words and requirements within the statute itself. *See S.S. v. Commonwealth*, 515 S.W.3d 201, 204 (Ky. App. 2016) (quoting *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 492 (Ky. 1998)) ("A statute should be construed, if possible, so as to effectuate the plain meaning and unambiguous intent expressed in the law."); *see also* KRS 13B.090(7) (placing burden on Cabinet), and KRS 600.020(1)(a)2. (excludes injuries from "accidental means"). We do not read the relevant statutes as creating strict liability for parents under these circumstances.

Further, "[w]hile the state has a compelling interest to protect its youngest citizens, state intervention into the family between parent and child must be done with utmost caution." *K.H.*, 358 S.W.3d at 31. We must be mindful of the "long-reaching consequences" of a finding of neglect. *Id.* Here, the finding of

neglect included placement of Mother, a school counselor/social worker, on a registry for those who have abused or neglected children for the remainder of her life. Such a severe punishment cannot be imposed without meeting the requisite burden of proof.

Therefore, we hold that the Cabinet failed to prove by <u>any</u> evidence that it was more likely than not that Mother created or allowed to be created a risk of physical or emotional injury by other than accidental means. *See* 922 KAR 1:330; *see also* KRS 600.020(1)(a)2.

Hence, the circuit court erred in concluding that the Cabinet's finding of neglect was based on substantial evidence, as discussed above. Again, this erroneous legal conclusion by the circuit court was the result of (a) an improper burden shift and (b) the near-binding deference given to the Cabinet's statutory interpretation of KRS 600.020(1)(a)2.

The circuit court stated, "While the Court is not without sympathy for [Mother] and the unfortunate circumstances she faced, it does not appear she can meet the burden for reversal . . . ." In essence, it appears the circuit court placed the burden on Mother to disprove the agency's finding and/or to prove the ingestion was an accident. However, that burden was not Mother's to bear. *See Baker*, 613 S.W.3d at 7 (citing KRS 13B.090(7)).

Under these circumstances, the circuit court was tasked with reversing or remanding the agency's final order if the Cabinet's legal conclusion of neglect was "[w]*ithout support of substantial evidence on the whole record*[.]"  KRS 13B.150(2)(c).  In other words, the circuit court's role was to determine if the Cabinet met the statutory requirements of KRS 600.020(1)(a)2. through substantial evidence.  In doing so, the court should *not* have relied upon the agency's statutory interpretations.  Again, questions of law are reviewed *de novo*.  *Seeger*, 542 S.W.3d at 290 (citation omitted).  Here, the circuit court quoted the Cabinet's finding of neglect, *i.e.*, Cabinet's application of the facts as they applied to KRS 600.020(1)(a)2., then stated that it could not "say [that] finding [was] arbitrary, capricious, or an abuse of discretion."  However, the court should not have used this stricter standard of review for the statutory interpretation (and such deference to the agency's interpretation of the statute), but rather, it should have proceeded with a *de novo* review of KRS 600.020(1)(a)2.  Judicial review has traditionally given deference to an agency's fact-finding, but matters of law are within the province of the judiciary.  *Bd. of Educ. of Fayette Cnty. v. Hurley-Richards*, 396 S.W.3d 879, 882 (Ky. 2013).

> Although courts are required to give great deference to an administrative agency's interpretation of its own regulations, "that [deference] does not rise to an abdication of the court's responsibility to finally construe the same statute or regulation."  *Delta Air Lines, Inc. v. Com., Revenue Cabinet*, 689 S.W.2d 14, 20 (Ky. 1985).  To that

end, we are obliged to adopt a "[c]onstruction that will accomplish the purpose of the law." *King v. Sermonis*, 481 S.W.2d 652, 654 (Ky. 1972).

*Comprehensive Home Health Servs., Inc. v. Pro. Home Health Care Agency, Inc.*, 434 S.W.3d 433, 442 (Ky. 2013).

Here, the circuit court should have assessed whether the Cabinet met its burden through substantial evidence without shifting the burden to Mother or deferring to the Cabinet's statutory interpretation. Hence, the circuit court erred in affirming the Cabinet's finding of neglect.

## CONCLUSION

Accordingly, we REVERSE the Hardin Circuit Court, VACATE the finding of neglect against Mother, and REMAND to the Cabinet with instructions to remove Mother's name from the central registry.

ALL CONCUR.

BRIEFS FOR APPELLANT:

F. Todd Lewis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Kevin Martz
Covington, Kentucky